No. 23-cv-02305 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SETH ALTER,

                                                      Plaintiff,

-against-

NEW YORK SCHOOLS CONSTRUCTION AUTHORITY and FELICE SONTUPE,

                                                      Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-146*
*New York, New York  10007*

*Of Counsel:  Karen K. Rhau*
*Tel.:  (212) 356-2475*
*Matter No.:  2023-027087*

Bruce Rosenbaum,
Karen K. Rhau,
    Of Counsel.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

    POINT I ....................................................................................................... 4

        THE FIRST AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE FIRST AMENDMENT RETALIATION CLAIM AND THERE IS NO PRIVATE RIGHT OF ACTION UNDER PAL § 2857 .......................................................................................... 4

        A.    Plaintiff's 42 U.S.C. § 1983 Retaliation Claim Based On The First Amendment Fails ................................. 4

        B.    Plaintiff's Claim Under PAL § 2857 Does Not Provide For A Private Right of Action To Enforce Its Provisions ........................................................................ 9

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Ahmad v. Nassau Health Care Corp.,
    8 A.D.3d 512 (2d Dep't 2004)................................................................................................10

DiFolco v. MSNBC Cable, L.L.C.,
    622 F.3d 104 (2d Cir. 2010)......................................................................................................2

Garcetti v. Ceballos,
    547 U.S. 410 (2006)..............................................................................................................5, 9

Matter of Madison County Indus. Dev. Agency v. State of NY Auths. Budget
    Off.,
    33 N.Y.3d 131 (2019).............................................................................................................10

Micillo v NY City Dept. of Educ.,
    No. 14 Civ. 00943 (LAK) (GWG), 2015 U.S. Dist. LEXIS 12321 (S.D.N.Y.
    Feb. 2, 2015) ............................................................................................................................7

Montero v. City of Yonkers,
    890 F.3d 386 (2d Cir. 2018)..................................................................................................5, 9

O'Connor v. Huntington U.F.S.D.,
    No 11-CV-1275 (JFB)(ARL), 2014 U.S. Dist. LEXIS 39596 (E.D.N.Y. Mar.
    24, 2014) ..................................................................................................................................7

Renken v. Gregory,
    541 F.3d 769 (7th Cir. 2008) ...................................................................................................7

Robinson v. New York City Dep't of Educ.,
    No. 20 CV 8175 (VSB), 2021 U.S. Dist. LEXIS 181134 (S.D.N.Y. 2021) .........................8, 9

Ross v. Breslin,
    693 F.3d 300 (2d Cir. 2012)..............................................................................................5, 7, 9

Shara v Maine-Endwell Cent. Sch. Dist.,
    46 F.4th 77 (2d Cir. 2022) ....................................................................................................5, 7

Weintraub v. Board of Educ.,
    593 F.3d 196 (2d Cir. 2010).........................................................................................5, 6, 7, 9

Williams v. Dallas Ind. Sch. Dist.,
    480 F3d 689 (5th Cir. 2007) ....................................................................................................7

**Statutes**

42 U.S.C. § 1983 .................................................................................................................1, 4

N.Y. Civil Service Law § 75-b ...................................................................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
SETH ALTER,

                                                         Plaintiff,      23-CV-02305 (ALC)

            -against-

NEW YORK CITY SCHOOLS CONSTRUCTION
AUTHORITY and FELICE SONTUPE
                                          Defendants.
------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

        Plaintiff, formerly employed as an Investigative Accountant for the Office of the Inspector General at the School Construction Authority ("SCA") from 2014-2022, commenced this action asserting a First Amendment retaliation claim under 42 U.S.C. § 1983 ("§ 1983") against Felice Sontupe, the former Inspector General of the SCA, as well as putative whistleblower claims under N.Y. Civil Service Law § 75-b and N.Y. Public Authorities Law § 2857 ("PAL § 2857") against the SCA. Plaintiff claims that he was marginalized in his office, and finally terminated, as a result of seeking investigations into various areas of alleged SCA misconduct.

        As set forth more fully below, Plaintiff's First Amendment retaliation and § 2857 claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. First, Plaintiff's First Amendment retaliation claim fails as his "speech" falls squarely within his official responsibilities as an Investigative Accountant with the SCA, and therefore does not qualify as speech protected by the First Amendment. Second, Plaintiff's claim pursuant to § 2857 fails since that law does not provide for a private right of action to enforce its provisions. For these reasons, and those

articulated fully below, Plaintiff's claims under the First Amendment and § 2857 should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff began his employment with the SCA as an investigative accountant in November of 2014. See First Amended Complaint ("FAC"), ECF Dkt. No. 18 at ¶ 14. Plaintiff claims he is an "experienced financial consultant" and that he is a Certified Public Accountant and Fraud Examiner, and that he is certified in Financial Forensics. Id. at ¶ 14. The FAC alleges that, as an investigative accountant, Plaintiff was tasked with "conduct[ing] audits of corporate records, contracts, and submissions . . . manag[ing] the evidentiary chain and inventory for all books, records, and other documents in the course of an investigation [and] assisting legal staff." Id. at ¶ 16. Plaintiff was also assigned to report to the Office of the Inspector General's Manager of Field Investigations, who would assign Plaintiff to specific investigations and assign Plaintiff tasks on these investigations. Id. at ¶ 15.

From 2014 until 2017, the Office of Inspector General ("OIG") was led by Inspector General Maria Mostajo. Id. at ¶ 18. Under her leadership, Plaintiff alleges he sought investigations of certain subjects and areas to safeguard the funds of the SCA and discover unlawful spending. Id. at ¶ 21. The FAC alleges that these tasks were outside of Plaintiff's job responsibilities, however, Plaintiff contends that they were welcomed and, at times,

---

[1] This statement of facts is derived from the allegations in the Amended Complaint (ECF Dkt. No. 18) which are assumed to be true for purposes of this motion to dismiss only. The exhibit referred to herein is annexed to the Declaration of Karen K. Rhau dated September 29, 2023 ("Rhau Decl.") accompanying this memorandum of law. Defendants rely upon the Investigative Accountant Job Profile annexed to the Declaration of Karen K. Rhau dated September 29, 2023 ("Rhau Decl."). See DiFolco v. MSNBC Cable, L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). This exhibit annexed thereto is incorporated by reference in the Amended Complaint and/or is integral to the Amended Complaint and may thus be considered for the purposes of deciding this this motion to dismiss. See id.

investigations were undertaken based on Plaintiff's requests. Id. at ¶ 21. Plaintiff alleges that he received positive evaluations for his work including an evaluation where he was rated "Very Good" from First Assistant Inspector General Gerard McEnroe. Id. at ¶ 18. Plaintiff alleges that Mostajo recommended Plaintiff for a promotion on two occasions, in December 2016 and again in April 2017. Id. at ¶ 19. Plaintiff contends that his direct supervisor at the time, Nicholas Scicutella, also supported the promotion requests. Id.

Plaintiff claims that he had a much different experience, however, when Sontupe became Inspector General. According to Plaintiff, Sontupe instructed him to stop seeking investigations into certain areas. Id. at ¶ 21. For instance, Plaintiff claims that he requested investigations into the following areas from 2017-2022: (1) improper commingling of funds for different projects; (2) improper non-emergency use of contractors who were only eligible to be hired outside normal bidding process for emergency situations; (3) potential violations of procurement processes; and (4) improper transactions between the New York City Department of Education and the SCA. Id. at ¶ 23a-d. Plaintiff claims Sontupe retaliated against him for making comments about these areas of investigation by withdrawing Plaintiff's prior recommendations for promotion, "reject[ing]" his observations, and by limiting Plaintiff's access and ability to view confidential sources of information thereby preventing Plaintiff from further investigating issues. Id. at ¶ 24. Plaintiff claims that these actions were taken because "Ms. Sontupe and others were annoyed by Mr. Alter's requests to investigate tough and uncomfortable internal issues." Id.

Plaintiff claims that Sontupe wrote a memorandum on September 16, 2020 where she described Alter as "antagonistic," "disruptive," and she also stated Plaintiff was engaging in "unprofessional behavior," and exhibiting a "disruptive nature and hostility to [his] supervisors."

3

Id. at ¶ 26.  Plaintiff alleges that he tried to complain to his supervisor at the time, William Schaeffer, that he believed Sontupe was retaliating against him, and he was told in response by Schaeffer, "I don't want to get in between whatever is going on between you and [Sontupe]." Id. at ¶ 28.

In December 2021, Plaintiff alleges he made complaints to the SCA's General Counsel and New York City Department of Investigation ("DOI") as a result of the alleged retaliation.  Id. at ¶ 29.  Plaintiff alleges that, in September 2022, the DOI concluded that there was no retaliation.  Id. at ¶ 31.  Plaintiff contends that, approximately 2 months after his complaint to DOI, SCA terminated his employment.  Id. at ¶ 32.

Plaintiff commenced this action on March 17, 2023.  See ECF Dkt. 1.  On July 11, 2023, this Court granted Plaintiff leave to file an amended complaint in this matter.  See ECF Dkt. No. 17.  Plaintiff filed an amended complaint on July 21, 2023.  See ECF Dkt. No. 18.

## ARGUMENT

### POINT I

**THE FIRST AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE FIRST AMENDMENT RETALIATION CLAIM AND THERE IS NO PRIVATE RIGHT OF ACTION UNDER PAL § 2857**

**A.     Plaintiff's 42 U.S.C. § 1983 Retaliation Claim Based On The First Amendment Fails**

Plaintiff claims that when Defendant Sontupe was appointed in 2017, Defendants took action against him by criticizing his work, limiting his responsibilities, and by denying Plaintiff a promotional opportunity because he sought investigations into several areas of the SCA involving the misuse of funds and misconduct.  See FAC, ECF Dkt. No. 18 at ¶¶ 3-4.  Plaintiff's First Amendment claim fails because he spoke as an employee as part of his assigned

4

job responsibilities, and not a citizen on a matter of public concern, and so his speech was not protected under the First Amendment.

To make out a prima facie case of First Amendment retaliation, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Shara v Maine-Endwell Cent. Sch. Dist., 46 F.4th 77, 82 (2d Cir. 2022). In determining the first prong of the test, courts will look at whether the employee spoke as a citizen, and also whether the employee spoke on a matter of public concern. See id. at 82. To determine whether an employee spoke as a citizen, courts will assess whether the "employee's speech falls outside of his official responsibilities; second . . . 'whether a civilian analogue' to the employee's speech exists." Id. at 83. Public employees speaking pursuant to their official duties are not speaking as citizens under the First Amendment. See Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). This is still the case even if the speech is a matter of public concern. See id. at 423.

In order to determine whether a public employee speaks pursuant to his official duties, courts will look at the nature of plaintiff's responsibilities and plaintiff's speech and the relationship between the two. See Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012). Speech concerning an employee's "ability to properly execute his duties" is speech made pursuant to those duties. Weintraub v. Board of Educ., 593 F.3d 196, 203 (2d Cir. 2010) (quotation marks omitted); accord Montero v. City of Yonkers, 890 F.3d 386, 390 (2d Cir. 2018). Speech does not have to be "included in[] the employee's job description," nor even "expressly required" by an employer, so long as it is a "means to fulfill" a major employment responsibility. Weintraub, 593 F.3d at 202-03.

5

Simply put, when Plaintiff purportedly requested investigations into the improper commingling of funds for projects, the improper non-emergency use of contractors, the potential violations of procurement processes, and the alleged improper transactions between the SCA and the New York City Department of Education, see ECF Dkt. No. 18, FAC at ¶ 23a-d, Plaintiff was only doing what he was supposed to do as an Investigative Accountant for the SCA. See FAC, ECF Dkt. No. 18. Plaintiff alleges that his tasks included "conduct[ing] audits of corporate records, contracts, and submissions . . . manag[ing] the evidentiary chain and inventory for all books, records and other documents obtained in the course of an investigation [and] assisting legal staff." See id. at ¶ 16. Plaintiff's alleged observations of "potentially improper transactions" between the SCA and the New York City Department of Education, and the improper commingling of funds could only come about by his "audit" of corporate records and contracts. Plaintiff's allegations that his "requests were outside his job responsibilities" is belied by his full job description. See Investigative Accountant Job Profile annexed to Rhau Decl. as Ex. A. According to Plaintiff's job description, he is "responsible for investigations that may result in administrative, civil, and criminal proceedings." Id. Furthermore, as an investigator, Plaintiff is tasked with "follow[ing], explor[ing], and exploit[ing] investigative leads." Id. Plaintiff's areas of investigation into the commingling of funds of certain projects, how contractors are used, violations of procurement processes and improper financial transactions between two governmental agencies are investigations that could very well result in civil or criminal proceedings. And by Plaintiff seeking investigation into these areas, he is exploring possible leads that may develop into investigations that DOI or OIG would have to explore.

"[S]peech is 'pursuant to' [an employee's] official duties [when] it [is] 'part-and-parcel of his concerns' about his ability to 'properly execute his duties' . . . [or a] 'means to

6

fulfill' and 'undertaken in the course of performing' [the employee's] primary employment responsibility." Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010) (quoting (Williams v. Dallas Ind. Sch. Dist., 480 F3d 689, 693, 694 (5th Cir. 2007) and Renken v. Gregory, 541 F.3d 769, 774 (7th Cir. 2008)) (internal citations omitted) (holding that speech can be "pursuant to" a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer.); O'Connor v. Huntington U.F.S.D., No 11-CV-1275 (JFB)(ARL), 2014 U.S. Dist. LEXIS 39596 at *22 (E.D.N.Y. Mar. 24, 2014) (holding that teacher spoke as a public employee, rather than as a private citizen, when he complained about potential grading improprieties.).

Plaintiff's claim that he was seeking investigations into potential areas of misconduct by the SCA as an investigative Accountant for the Office of Inspector General at the SCA, even if true, is "part-and-parcel of [Plaintiff's] concerns about his ability to properly execute his duties." Shara 46 F.4th at 86 (quoting Weintraub, 593 F.3d at 203) (holding that school bus driver who argued with a School District mechanic — and later with School District officials — over the frequency with which bus inspection results should be reported did not engage in speech protected by the First Amendment). In any event, an employee's characterization of his own speech is not dispositive. See Ross, 693 F.3d at 307. Additionally, allegedly seeking investigations into potential areas of misconduct, are all a "means to fulfill" and "undertaken in the course of performing" his primary employment responsibility as an investigative accountant. See Weintraub, 593 F.3d at 203. In fact, Plaintiff's speech concerning funds used by the SCA or its procurement processes, in effect, stemmed from his intimate knowledge of the SCA as an investigative accountant, which "owed its existence to Plaintiff's professional responsibilities." Micillo v NY City Dept. of Educ., No. 14 Civ. 00943 (LAK)

7

(GWG), 2015 U.S. Dist. LEXIS 12321, at *11-12 (S.D.N.Y. Feb. 2, 2015) ("restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.") (rejecting claim that an Assistant Principal engaged in protected free speech by reporting timecard fraud), objection overruled by, adopted by, motion granted by and complaint dismissed, 2015 U.S. Dist. LEXIS 26405 (S.D.N.Y., Mar. 3, 2015).  Any possible mismanagement of funds or improper use of resources would only come by virtue of Plaintiff's responsibilities as an investigative accountant for the SCA.

The Plaintiff here engaged in similar conduct to the plaintiff in Robinson v. New York City Dep't of Educ., No. 20 CV 8175 (VSB), 2021 U.S. Dist. LEXIS 181134, *18 (S.D.N.Y. 2021).  There the Court granted the defendant's motion to dismiss a complaint where the plaintiff alleged First Amendment retaliation claiming she was terminated for having reported several violations of state law to her immediate supervisor and the Special Commissioner of Investigation for the New York City School District.  Plaintiff in Robinson was the Executive Director of New York City Department of Education's Office of Pupil Transportation ("OPT").  The plaintiff reported violations related to bus driver certifications and training certificates, including an allegation that one private company was selling invalid bus driver certificates.  Plaintiff argued that her "speech" to those entities is protected under the First Amendment because the testimony to the FBI and New York Attorney General's ("NYAG") office in response to some subpoenas were outside the scope of her ordinary job duties.  See id. The Court held that while that may be true "Plaintiff was only speaking to the FBI and NYAG based on her specialized knowledge of DOE and OPT matters."  Id.  The Court stated further that "Plaintiff does not address the core problems for her First Amendment retaliation claim: (1) that

her speech was central to her employment responsibilities to oversee training and certification for public school bus drivers, and (2) that she knew about the issues in question because of the specialized knowledge she gained through her employment position." Id.  As such, the Court concluded that "Plaintiff was in no way speaking as an ordinary citizen; therefore, she cannot satisfy the first element" of a First Amendment retaliation claim.  Id.  Like the plaintiff in Robinson, Plaintiff's alleged speech here was central to his employment responsibilities concerning investigations surrounding the SCA and he only knew about those issues because of his specialized knowledge of investigations as an investigative accountant.

Moreover, even though there may have been a civilian analogue in connection with his claimed report to DOI, that alone is not dispositive.  As noted above, ultimately, courts have emphasized, "the inquiry into whether speech was made pursuant to an employee's official duties is a practical one, focused on whether the speech was part-and-parcel of his concerns about his ability to properly execute his duties." Ross, 693 F.3d at 305-306 (internal quotation marks and citations omitted); see Garcetti, 547 U.S. at 424; Montero, 890 F.3d at 398; Weintraub, 593 F.3d at 202, 203; Robinson, 2021 U.S. Dist. LEXIS 181134, *18.  The fact that Plaintiff's "speech" indisputably owes its existence to his role as an investigative accountant, when he complained of improper transactions between the SCA and the New York Department of Education for instance, demonstrates Plaintiff was not speaking as a citizen.  As such, Plaintiff's First Amendment claim should be dismissed.

B. **Plaintiff's Claim Under PAL § 2857 Does Not Provide For A Private Right of Action To Enforce Its Provisions**

Plaintiff alleges that the SCA violated the whistleblower protection provision of PAL § 2857.  First, for the reasons set forth above, Plaintiff's "disclosures" were merely part of his work as an investigative accountant for the SCA; thus, Plaintiff cannot be deemed to be a

9

"whistleblower." Moreover, this law does not provide for a private right of action to enforce its provisions. Courts will imply a private right of action if the following conditions are met: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." Ahmad v. Nassau Health Care Corp., 8 A.D.3d 512, 513 (2d Dep't 2004). Even if the Plaintiff may be one of the class for whose benefit the statue was enacted, recognition of a private right of action would not promote the legislative purpose and would not be consistent with the legislative scheme. In an effort to provide the public with greater transparency of the activities of public authorities, legislation was enacted in 2009 expanding the powers and resources of the Authorities Budget Office ("ABO") to enable it to better "police" state and local public authorities including a full range of enforcement powers to "act upon complaints" regarding any authority. See, generally, Matter of Madison County Indus. Dev. Agency v. State of NY Auths. Budget Off., 33 N.Y.3d 131, 136-137 (2019). PAL § 2857 was enacted as part of that legislation but the independent ABO was vested with the enforcement authority. A private right of action under PAL § 2857 would not promote the legislative purpose or be consistent with the legislative scheme to enhance the powers and independence of the ABO. In fact, according to the mission statement of the New York State Authorities Budget Office, the powers of the ABO include "investigating and acting on complaints concerning the failure of a public authority to comply with State law." Authorities Budget Office, mission statement, https://www.abo.ny.gov/abo/about_mission.html. See Mission Statement annexed to Rhau Decl. as Ex. B. As such, no private right of action could exist under PAL § 2857 and so Plaintiff's claim based on this statute should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their partial motion to dismiss the Amended Complaint relating to the foregoing claims, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         September 29, 2023

                                       **HON. SYLVIA O. HINDS-RADIX**
                                       Corporation Counsel of the
                                          City of New York
                                       Attorney for Defendants
                                       100 Church Street, Room 2-146
                                       New York, New York 10007
                                       (212) 356-2475
                                       krhau@law.nyc.gov

                                  By:  *Karen K. Rhau*
                                            Karen K. Rhau
                                            Assistant Corporation Counsel

Bruce Rosenbaum,
Karen K. Rhau,
  Of Counsel.