**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

SETH ALTER,

                     Plaintiff,                     Case No. 1:23-cv-02305

        -against-


NEW YORK CITY SCHOOLS CONSTRUCTION
AUTHORITY and FELICE SONTUPE,

                Defendants.

-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW**
**<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

III. ARGUMENT .......................................................................................................... 5

    A. Standard of Review on Rule 12(b)(6) Motion to Dismiss ............................... 5

    B. The Court Should Not Consider Extraneous Material Submitted by Defendants.......... 6

    C. Mr. Alter States A Claim for First Amendment Retaliation .......................... 8

        1. Defendants' Motion Improperly Raises Factual Disputes ................................. 9

        2. Plaintiff's Speech, Which He Made as a *Citizen,* is Protected ........................... 9

    D. Plaintiff's Claim Under the N.Y. Public Authorities Law Should Stand ................... 14

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC,*
   692 F.3d 42 (2d Cir. 2012) ........................................................................... 9

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002) ......................................................................... 6

*CPC Intl. v McKesson Corp.,*
   70 NY2d 268 (1987) ................................................................................... 15

*Cruz v TD Bank,*
   *N.A.,* 22 N.Y.3d 61 (2013) .......................................................................... 15

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010) ......................................................................... 6

*Faulkner v. Beer,*
   463 F.3d 130 (2d Cir. 2006) ......................................................................... 7

*Fed. Ins. Co. v. Gander & White Shipping, Inc.,*
   2020 U.S. Dist. LEXIS 119751 (S.D.N.Y. July 8, 2020) ............................ 9

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006) ............................................................................... 10, 11

*Goldman v. Belden,*
   754 F.2d 1059 (2d Cir. 1985) ....................................................................... 5

*Golodner v. Berliner,*
   770 F.3d 196 (2d Cir. 2014) ....................................................................... 10

*Hayden v. County of Nassau,*
   180 F.3d 42 (2d Cir. 1999) ........................................................................... 6

*Jackler v. Byrne,*
   658 F.3d 225 (2d Cir. 2011) ............................................................. 11, 12, 13

*Kassner v. 2nd Ave. Delicatessen Inc.,*
   496 F.3d 229 (2d Cir. 2007) ......................................................................... 6

*Lane v. Franks,*
   134 S.Ct. 2369 (2014) ................................................................................ 10

i

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006)................................................................................. 6

*Matter of Madison Cty. Indus. Dev. Agency v. State of N.Y. Auths. Budget Office*,
   2019 NY Slip Op 02150, N.Y.3d 131 (2019) ...................................................... 16

*McLean v City of New York*,
   12 N.Y.3d 194 (2009) ........................................................................................ 15

*Metz v State of New York*,
   20 N.Y.3d 175 (2012) ........................................................................................ 15

*Montero v. City of Yonkers*,
   890 F.3d 386, 2018 U.S. App. LEXIS 12629 (S.D.N.Y. 2018). ........................... 11

*New Y-Capp v. Arch Capital Funding, LLC*,
   2022 U.S. Dist. LEXIS 180309 (S.D.N.Y. Sep. 30, 2022) ..................................... 5

*Ortiz v. Ciox Health LLC*,
   2021 NY Slip Op 06425, N.Y.3d 353 (2021) ...................................................... 15

*Phillips v. Reed Grp., Ltd.*,
   955 F. Supp. 2d 201 (S.D.N.Y. 2013)................................................................... 9

*Schlessinger v. Valspar Corp.*,
   21 N.Y.3d 166 (2013) ........................................................................................ 15

*Shara v. Me.-Endwell Cent. Sch. Dist.*,
   46 F.4th 77 (2d Cir. 2022) ................................................................................. 10

*Sheehy v. Big Flats Community Day*,
   73 N.Y.2d 629 (1989) ................................................................................... 14, 15

*Smith v. County of Suffolk*,
   776 F.3d 114 (2d Cir. 2015)............................................................................... 10

*Snyder v. Phelps*,
   562 U.S. 443, 131 S. Ct. 1207 (2011)................................................................. 10

*Specht v. City of New York*,
   15 F.4th 594 (2d Cir. 2021). ....................................................................... 9, 10, 13

*Vega v. CM & Assoc. Constr. Mgmt., LLC*,
   2019 NY Slip Op 06459, 175 A.D.3d 1144 (1st Dept. 2019)................................ 14

**Rules and Other Authorities**

F.R.C.P Rule 12(b)(6) .................................................................................................. 5, 6

N.Y. Penal Law § 175.30 .............................................................................................. 13

N.Y. Pub. Auth. Law § 2857 .................................................................................. 1, 14, 15

N.Y. Pub. Auth. Law § 2986 .......................................................................................... 14

N.Y. Pub. Auth. Law § 6 ............................................................................................... 16

Public Authorities Reform Act of 2009 ("PARA"). ................................................... 15, 16

Plaintiff Seth Alter respectfully submits this memorandum of law in opposition to the partial motion to dismiss Plaintiff's Amended Complaint submitted by Defendants New York City Schools Construction Authority and Felice Sontupe.

## I.   PRELIMINARY STATEMENT

Seth Alter, a Certified Public Accountant who worked as an Investigative Accountant for the New York City School Construction Authority ("SCA"), blew the whistle on his employer after he encountered potential financial improprieties while looking at publicly available documents that were not within the scope of his work.  After requesting that these financial improprieties be investigated, Mr. Alter's boss withdrew the recommendation that Mr. Alter be promoted and began to limit his access to information.  Mr. Alter, undeterred and still committed to uncovering possible malfeasance, complained to the Office of the Inspector General ("OIG") that he had been retaliated against.  After a cursory investigation by the OIG and a finding that the SCA had not retaliated against Mr. Alter, Mr. Alter's employment was terminated in a final act of retaliation.

To avoid potential liability under federal law, Defendants have filed a partial motion to dismiss two of Mr. Alter's three claims.  Defendants' motion should be denied for three reasons: (1) it improperly relies on documents outside of the pleadings; (2) it fails to establish that Mr. Alter's First Amendment claims are barred because he spoke as an employee, and not a citizen, when he made complaints of retaliation to the OIG; and (3) it fails to demonstrate that there is no private right of action available under New York Public Authorities Law § 2857.

## II.     STATEMENT OF FACTS

The following factual allegations, which are taken from Plaintiff's filed Amended Complaint, are assumed to be true for the purposes of a motion to dismiss.

Plaintiff Seth Alter is an experienced financial consultant with certifications as a Certified Public Accountant, Certified in Financial Forensics and Certified Fraud Examiner.[1]  From November 2014 until November 2022, when he was unlawfully terminated in retaliation for his protected whistleblower activity, Mr. Alter served as an Investigative Accountant for the Office of the Inspector General ("OIG") at the New York City School Construction Authority ("SCA").[2]

As an Investigative Accountant, Mr. Alter reported to the OIG's Manager of Field Investigations.[3]  In April 2021, Mr. Alter began to report to the OIG's Chief of Staff, William Schaeffer.[4]  Mr. Alter's supervisors would assign Mr. Alter to specific investigations and would give him tasks on these investigations, which included "conduct[ing] audits of corporate records, contracts, and submissions … manag[ing] the evidentiary chain and inventory for all books, records, and other documents obtained in the course of an investigation [and] assisting legal staff."[5]  Mr. Alter's job duties did _not_ include determining what the OIG should investigate; those decisions were made by the Inspector General herself or her senior staff.[6]

From 2014 to 2017, while the OIG was led by Inspector General Maria Mostajo, Mr. Alter received positive evaluations for his work and Ms. Mostajo twice recommended that Mr.

---

[1] Amended Complaint ("AC"), ECF No. 18 at ¶ 13.
[2] AC at ¶ 14.
[3] AC at ¶ 15.
[4] _Id._
[5] AC at ¶¶ 15, 16.
[6] AC at ¶ 17.

Alter be promoted.[7]  Under Ms. Mostajo, Mr. Alter would at times "seek investigations of certain subjects and areas to safeguard the funds of the School Construction Authority and discover inappropriate or unlawful spending. Although Mr. Alter's requests were outside his job responsibilities, under Inspector General Mostajo, they were welcomed and on occasion investigations were undertaken based on Mr. Alter's requests."[8]  However, when Ms. Mostajo retired in 2017 and was replaced by Defendant Felice Sontupe, Mr. Alter's fortunes at the SCA changed for the worse.[9]  Defendant Sontupe did not appreciate Mr. Alter's requests to open investigations and instructed him to stop.[10]  Mr. Alter, however, continued to request areas of potential investigation.[11]  From 2017 to 2022, Mr. Alter requested that investigations take place into the following areas:

    a.  Improper comingling of funds for projects that were required to be funded from a specific source with funds for other types of projects as well as use of restricted funds for projects outside the scope of the restriction. This included use of "Hurricane Sandy" funds for non-Hurricane Sandy projects and use of School Construction Authority Funds on non-school related projects, such as COVID testing centers at Kennedy and LaGuardia airports, as well as for the cleaning of Rikers Island jails.

    b.  Improper non-emergency use of contractors who were only eligible to be hired outside of the normal bidding process for emergency situations.

---

[7] *Id.* at ¶¶ 18-19.
[8] *Id.* at ¶ 21.
[9] *Id.* at ¶¶ 3, 20.
[10] *Id.* at ¶ 22.
[11] *Id.* at ¶ 23.

    c.   Potential violations of procurement processes, including not obtaining the minimum required number of bidders for projects and discriminating against certain bidders.

    d.   Based on Mr. Alter's review of publicly available financial statements of the School Construction Authority and the New York City Department of Education, he identified potentially improper transactions between the two entities totaling in the hundreds of millions of dollars.  Mr. Alter also noted that the Department of Education's financial statements indicated questionable revenue from the School Construction Authority.[12]

Defendant Sontupe retaliated against Mr. Alter for his suggestions on potential areas of investigation by (1) withdrawing the recommendation to promote him; (2) ignoring him; (3) rejecting his observations; and (4) preventing him from further investigating serious issues by limiting his system access.[13]  On multiple occasions, Defendant Sontupe explicitly directed Mr. Alter to "stop looking into" various areas of potential School Construction Authority wrongdoing.[14]  When Mr. Alter complained to his supervisor that he (Mr. Alter) believed that Sontupe was retaliating against him the supervisor advised Mr. Alter "not to go there" and rejected Mr. Alter's request to intervene, stating: "I don't want to get in between whatever is going on between you and [Sontupe]."[15]

In a memo dated September 16, 2020, Defendant Sontupe described Mr. Alter as "antagonistic" and "disruptive," engaging in "unprofessional behavior," and exhibiting a

---

[12] *Id.* at ¶ 23.
[13] *Id.* at ¶ 24.
[14] *Id.* at ¶ 25.
[15] *Id.* at ¶ 28.

"disruptive nature and hostility to [his] supervisors."[16]  Despite Defendant Sontupe's apparent disdain for Mr. Alter, which was well known within the OIG, Mr. Alter's objective performance was still more than satisfactory; in his last performance review, dated December 2020, Mr. Alter was rated as "exceeds expectations."[17]

By letter dated December 2021, Mr. Alter made written whistleblower complaints to the SCA's General Counsel and the NYC Department of Investigation ("DOI").[18]  Mr. Alter's letter outlined the various areas of investigation he had requested as well as the retaliation he had experienced.[19]  In September 2022, after a cursory investigation, the DOI summarily concluded that Mr. Alter had not been retaliated against.[20]  Approximately two months, the SCA terminated Mr. Alter's employment at Defendant Sontupe's direction.[21]

## III.   ARGUMENT

### A. Standard of Review on Rule 12(b)(6) Motion to Dismiss.

As this Court has stated, Plaintiff's factual allegations, taken from the pleadings, are assumed to be true for the purposes of a motion to dismiss.  *See New Y-Capp v. Arch Capital Funding, LLC*, No. 18-cv-3223 (ALC), 2022 U.S. Dist. LEXIS 180309, at *2 (S.D.N.Y. Sep. 30, 2022).  "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Id.* (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).  In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must

---

[16] *Id.* at ¶ 26.
[17] *See id.* at ¶¶ 27-28.
[18] *Id.* at ¶ 29.
[19] *Id.* at ¶ 30.
[20] *Id.* at ¶ 31.
[21] *Id.* at ¶ 32.

draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

**B.  The Court Should Not Consider Extraneous Material Submitted by Defendants.**

Defendants improperly rely on two documents outside of the pleading in support of their motion: the Investigative Accountant Job Profile and a webpage printing that purports to state the mission statement for the Authorities Budget Office ("ABO").[22]  Because these documents are (1) neither incorporated by reference in no integral to the Amended Complaint; and (2) lacking authenticity, they must be disregarded by the Court.

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) and *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  Where a document is not incorporated by reference, the court may only consider that document if the complaint "relies heavily upon its terms and effect," thus making the document "integral" to the complaint.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).  The Second Circuit has reiterated that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Chambers*, 282 F.3d at 153 (2d Cir. 2002) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (emphasis in original).  However, "[e]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute

---

[22] These documents are annexed as Exhibits A and B, respectively, to the Declaration of Karen K. Rhau in Support of Defendants' Partial Motion to Dismiss the Amended Complaint ("Rhau Decl.").

exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id*.

Here, Defendants have failed to satisfy their burden to demonstrate that the extraneous documents they submitted in support of their motion should be considered by the Court. With regard to the Investigative Accountant Job Profile (Exhibit A), Defendants simply state, in a conclusory and cursory footnote, that it "is incorporated by reference in the Amended Complaint and/or is integral to the Amended Complaint and may thus be considered for the purposes of deciding this this motion to dismiss." Memorandum of Law in Support of Defendants' Partial Motion to Dismiss the Complaint ("Def. MOL"), ECF No. 25, at 2, n.1. There is no additional explanation or analysis as to why Defendants should be permitted to rely on the document. With regard to the ABO mission statement (Exhibit B), Defendants provide absolutely no explanation or analysis as to why or how the Court may consider this extraneous document.

There is, indeed, no basis to consider these documents at this time. First, the Investigative Accountant Job Profile and the ABO webpage are not incorporated by reference into the Amended Complaint. Although Mr. Alter references his job description *once* in describing what his tasks were as an Investigative Accountant (*see* AC at ¶ 16), totaling three lines of the 50-paragraph pleading, it cannot be said that the complaint "relies heavily upon its terms and effect," of the job description such that it is "integral" to the complaint. The ABO mission statement is never referenced in the pleading at all. Defendants have made no showing that Mr. Alter relied "on the terms and effect of a document in drafting the complaint." The fact that Mr. Alter references his job description once in his pleading is not enough.

Second, even if the Court were to determine that these documents were integral to Mr. Alter's pleading, Defendants have failed to show "that no dispute exists regarding the authenticity or accuracy of the document." Indeed, neither document has been authenticated, and there are numerous questions concerning these documents. For example, with regard to the Investigative Accountant Job Profile, Defendants have provided no proof that this is the job description that Mr. Alter read or responded to when he applied to work for the SCA. Mr. Alter alleged that he began working for the SCA in November 2014,[23] yet the Job Profile is dated 11/17/2014, which means the document may have been drafted and distributed *after* Mr. Alter began working for the SCA. Defendants have not explained where they obtained this document or whose custody it was in. In other words, discovery would need to be conducted to ascertain the authenticity, accuracy, and relevance of the Investigative Accountant Job Profile.

The Court should not consider the two extraneous documents submitted by Defendants in deciding the present motion.

### C. Mr. Alter States A Claim for First Amendment Retaliation

Defendants argue that Plaintiff's First Amendment claim should be dismissed "because he spoke as an employee as part of his assigned job responsibilities, and not a citizen on a matter of public concern, so his speech was not protected under the First Amendment." Def. MOL at 4-5. Because (1) Defendants' argument necessarily relies on facts outside of the pleadings; and (2) the filed Amended Complaint pleads that Mr. Alter was speaking as a citizen regarding matters outside of his employment responsibilities, Plaintiff's First Amendment claim should stand and proceed to discovery.

---

[23] *See* AC at ¶ 14.

1.  Defendants' Motion Improperly Raises Factual Disputes

Defendants claim that Plaintiff's requests that the SCA conduct investigations into subject areas such as the improper commingling of funds for projects, improper non-emergency use of contractors, potential violations of procurement processes, and improper transactions between the SCA and the New York City Department of Education were undertaken as part of Plaintiff's role as an Investigative Accountant.  *See* Def. MOL at 6.  In order to make this argument, Defendants do not rely on the pleadings, as they must.  Instead, Defendants rely primarily on the Investigative Accountant Job Profile, which, as explained in Section III.B., *supra*, is an extraneous document that is not integral to the Amended Complaint, that lacks authenticity and thus should not be considered by the Court.  In relying on the Investigative Accountant Job Profile, Defendants have raised factual disputes that are "not properly resolved on a motion to dismiss."  *Fed. Ins. Co. v. Gander & White Shipping, Inc.*, No. 1:19-CV-07209 (ALC), 2020 U.S. Dist. LEXIS 119751, at *6 (S.D.N.Y. July 8, 2020) (citing *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) and *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 240 (S.D.N.Y. 2013)).  Defendants' motion could easily be denied on this ground alone.

2.  Plaintiff's Speech, Which He Made as A *Citizen*, Is Protected.

Even if the Court were to proceed to the merits of Mr. Alter's First Amendment claim, Defendants' motion should still be denied because Plaintiff has sufficiently alleged pursuant to established Second Circuit law that he engaged in protected speech as a citizen and was fired in retaliation for that speech. *See Specht v. City of New York*, 15 F.4th 594 (2d Cir. 2021).

To survive a motion to dismiss, a plaintiff claiming that he was retaliated against in violation of the First Amendment must plausibly allege that (1) he engaged in speech or activity

that was protected by the First Amendment; (2) he suffered an adverse employment action; and

(3) a causal connection existed between the adverse action and the protected activity.  *Smith v.*

*County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).  The speech of a public employee is

protected by the First Amendment when the employee speaks as a citizen on a matter of public

concern, rather than pursuant to his employment responsibilities.  *Garcetti v. Ceballos*, 547 U.S.

410, 420-21 (2006).[24]  "Speech deals with matters of public concern when it can be fairly

considered as relating to matters of political, social, or general interest to the community or value

and concern to the public."  *Specht v. City of N.Y.*, 15 F.4th 594, 600 (2d Cir. 2021) (citing

*Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207 (2011)). To identify matters of public

concern, courts consider "the motive of the speaker, cognizant that speech on a purely private

matter does not pertain to a matter of public concern and, conversely, that an individual

motivated by a personal grievance can simultaneously speak on a matter affecting the public at

large[.]"  *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014) (internal quotation marks and

alterations omitted).  Here, it is fair to conclude that Mr. Alter requested investigations into

matters of "general interest to the community," including the potential improper commingling of

Hurricane Sandy funds for non-Hurricane Sandy projects, and use of SCA funds on non-school

related projects, such as COVID testing centers at Kennedy and LaGuardia airports, as well as

for the cleaning of Rikers Island jails, all of which are matters "affecting the public at large."

Unlike, for example, an "internal work dispute over paperwork that would not be of interest to

the public," *see Shara v. Me.-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 88 (2d Cir. 2022), Mr.

---

[24] The United States Supreme Court has specifically stated that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."  *Lane v. Franks*, 134 S.Ct. 2369, 2379 (2014).

Alter's concerns were not based on personal grievances, could be of great interest to the public, and were not motivated by anything other than preserving the public fisc.

Another consideration is whether the public employee's complaint has a has a "citizen analogue, i.e., a 'relevant analogue to speech by citizens who are not government employees,'" *see Montero v. City of Yonkers*, 890 F.3d 386, 396, 2018 U.S. App. LEXIS 12629, *17 (S.D.N.Y. 2018). If so, this will weigh in favor of a finding that the employee's speech was protected citizen speech. The Second Circuit Court of Appeals has explained that "an *indicium* that speech by a public employee has a civilian analogue is that the employee's speech was to an independent state agency responsible for entertaining complaints by any citizen in a democratic society regardless of his status as a public employee." *Jackler v. Byrne*, 658 F.3d 225, 241 (2d Cir. 2011) (internal quotations omitted) (holding that a police officer "was not simply doing his job in refusing to obey" orders to file an allegedly false report). The *Jackler* holding "was bolstered by the fact that Jackler had made his report to an independent state agency, a channel available to citizens generally." *Montero*, 890 F.3d at 397 (quotations omitted).

Here, Mr. Alter has alleged that he requested that the SCA initiate investigations into several areas of potential investigation. At least one of Mr. Alter's requests was "based on Mr. Alter's review of <u>publicly available</u> financial statements" of the SCA and the NYC Department of Education.[25] These allegations sufficiently demonstrate that Mr. Alter was speaking "as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 420-21.

Mr. Alter has further alleged that, in December 2021, he "made written whistleblower complaints to the School Construction Authority's General Counsel and the New York City Department of Investigation"[26] and that these complaints "outlined the various areas of

---

[25] AC at ¶ 23 (emphasis added).
[26] AC at ¶ 29.

investigation he had requested to his supervisors and Ms. Sontupe as well as the retaliation he

had experienced."[27]  Mr. Alter's complaint to the DOI was speech made "to an independent state

agency responsible for entertaining complaints by any citizen in a democratic society regardless

of his status as a public employee." *Jackler v. Byrne*, 658 F.3d 225, 241.  This complaint was

exactly the type of citizen speech that the Second Circuit has contemplated and approved.

      The case that Defendants rely upon, *Robinson v. New York City Department of*

*Education*, No. 20 CV 8175 (VSB), 2021 U.S. Dist. LEXIS 181134, *18 (S.D.N.Y. 2021), is

readily distinguishable.  In *Robinson*, the plaintiff was the Executive Director of the New York

City Department of Education's Office of Pupil Transportation ("OPT"), who claimed she was

unlawfully retaliated against after reported violations of state law regarding the certification and

training of public school bus drivers.  As the Executive Director of the OPT, Ms. Robinson

possessed "special knowledge she gained from her unique position as Executive Director,"

including "a thorough and detailed understanding of DOE's legal requirements when approving

public school bus drivers."  *Id.* at *17.  Indeed, the court noted that Ms. Robinson's complaints

"were largely informed by extremely specialized knowledge gleaned from her job" *id.*, and that

Robinson "even made a complaint after purportedly seeing certain confidential materials in her

colleague's wastebasket in the DOE offices."  *Id.* at *17-18 (S.D.N.Y. Sep. 22, 2021).

      Mr. Alter's position is simply not analogous; as an Investigative Accountant, Mr. Alter's

"employment responsibilities" did not include suggesting potential areas of investigation and

then pursuing such areas.  Mr. Alter's complaints were not informed by specialized knowledge

he had gleaned from his job, and he did not obtain his information from confidential materials

---

[27] AC at ¶ 30.

that were in his possession by virtue of his job; indeed, Mr. Alter has alleged that he obtained

certain documents from publicly available sources.

The present case is much more similar to *Specht v. City of New York*, 15 F.4th 594 (2d

Cir. 2021).  In *Specht*, a New York City fire marshal alleged that, after he refused to file a false

report concerning the circumstances of a fire he was investigating and publicly discussed

misconduct on the part of his supervisors, he was unlawfully retaliated against.  Specht alleged a

First Amendment retaliation claim, among other claims.  Defendants' motion to dismiss was

granted.  *Id.* at 599.  On appeal, the Second Circuit reversed, finding that Specht's "refusal to file

a false report may receive First Amendment protection."  *Id.* at 603.  It reasoned that the "filing

of a false report—or the refusal to file one—is most assuredly not within the scope of a public

employee's duties because, among other reasons, the filing of a false investigative report is a

crime in New York.  Thus, Specht's refusal to do so can hardly be considered 'part-and-parcel'

of his duties."  *Id.* at 604 (citing N.Y. Penal Law § 175.30 and *Jackler*, 658 F.3d at 241-42).

Here, the same logic applies: Mr. Alter was explicitly instructed to "stop" requesting

investigations into potential misuse of funds.  He refused to stop, leading Defendants to retaliate

against him.  Mr. Alter's refusal to stop requesting investigations is obviously not "part and

parcel" of his duties and could not have been done in his capacity as an employee, because he

was defying his supervisor's instruction.

### D.  Plaintiff's Claim Under the N.Y. Public Authorities Law Should Stand.

Defendants' second argument – that Plaintiff's claim under N.Y. Public Authorities Law

§ 2857 should be dismissed because the statute does not provide for a private right of action, *see*

Def. MOL at 9-10 – is also unavailing.  Defendants have cited no authority for their argument

that the statute does not provide a private right of action.  This is unsurprising, because no court has ever made such a finding.  This Court should not be the first to do so.

The law states: "No state or local authority shall fire, discharge, demote, suspend, threaten, harass or discriminate against an employee because of the employee's role as a whistleblower, insofar as the actions taken by the employee are legal."  N.Y. Pub. Auth. Law § 2857.  Where a statute does not expressly authorize a private action, courts must analyze whether a remedy may be implied.  *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶ 2, 175 A.D.3d 1144, 1146 (1st Dept. 2019).  A private right of action may be implied in a statute when the "plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme."  *Id.* at 1146-47 (citing *Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 633 (1989)).

First, Defendants do not dispute that Mr. Alter is a member of the class for whose particular benefit the statute was enacted.  *See* Def. MOL at 10.

Second, despite Defendants' contention to the contrary, Mr. Alter was a whistleblower as defined by N.Y. Pub. Auth. Law § 2986: "'Whistleblower' shall mean any employee of a state or local authority who discloses information concerning acts of wrongdoing, misconduct, malfeasance, or other inappropriate behavior by an employee or board member of the authority, concerning the authority's investments, travel, acquisition of real or personal property, the disposition of real or personal property and the procurement of goods and services."  Allowing Mr. Alter to bring suit would promote the legislative purpose of section 2857, which is to prevent adverse employment action against employees who blow the whistle on state or local authorities.

Third, permitting a private right of action would also be consistent with the legislative

scheme, the Public Authorities Reform Act of 2009 ("PARA").  In analyzing this third factor,

"the presence of alternative enforcement mechanisms is frequently determinative."  *Ortiz v. Ciox*

*Health LLC*, 2021 NY Slip Op 06425, ¶ 4, 37 N.Y.3d 353, 361 (2021).  "[W]here a statutory

scheme contains private or public enforcement mechanisms, this demonstrates that the legislature

considered and decided what avenues of relief were appropriate."  *Id.* at 362.  In cases where the

New York Court of Appeals has found that the third factor is not met, the legislative scheme

specifically set forth the available public enforcement mechanisms.  *See CPC Intl. v McKesson*

*Corp.*, 70 NY2d 268 (1987) (noting the Attorney General's broad authority to enforce the N.Y.

G.B.L.'s provisions on behalf of the State by investigating, obtaining civil damages and

injunctive relief, creating a receivership, subpoenaing witnesses, and instituting criminal

prosecution); *Sheehy*, 73 N.Y.2d 629 (explaining that a statute related to the N.Y. Penal Law

under which plaintiff sued provided for civil liability in many cases of injury); *Cruz v TD Bank,*

*N.A.*, 22 N.Y.3d 61 (2013) (concluding that the existence of other remedies, namely that an

account holder could bring a special summary proceeding to adjudicate disputes demonstrated

that the third factor was not met); *see also Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166,

171(2013) (provision provided for civil penalties recoverable by the Attorney General); *Metz v*

*State of New York*, 20 N.Y.3d 175, 180-181 (2012) (law provided for criminal penalties and

fines); *McLean v City of New York*, 12 N.Y.3d 194, 200-201 (2009) (statute provided for

suspension of licenses and registrations for violations and imposed civil penalties for such

violations).

Here, there is no alternative enforcement mechanism.  Although the PARA "expand[ed]

the powers and resources of the ABO [Authorities Budget Office] to enable it to better 'police'

state and local authorities" and "enhanced" the ABO's powers, *see Matter of Madison Cty. Indus. Dev. Agency v. State of N.Y. Auths. Budget Office*, 2019 NY Slip Op 02150, ¶ 2, 33 N.Y.3d 131, 136 (2019), the PARA does <u>not</u> contain provisions that give the ABO the authority to enforce the provision through civil remedies.  *See* N.Y. Pub. Auth. Law § 6.  Importantly, although the ABO may "initiate formal investigations in response to complaints or appearances of non-compliance by an authority" *see* N.Y. Pub. Auth. Law § 6(2)(d), that appears to be the limit of the ABO's authority.  There is no indication in the PARA that the ABO may actually bring a civil action in court or otherwise enforce the provisions of the law.  For example, in contrast to the laws examined by the Court of Appeals whereby the third factor was satisfied, the PARA does not give the Director of the ABO or the Attorney General the power to investigate, obtain civil damages and/or injunctive relief, or pursue a special summary proceeding to adjudicate disputes.  Moreover, a review of publicly available filings on the New York State and federal court electronic databases reveals that the ABO has never filed a case in court, leading to the conclusion that the ABO does not have an enforcement mechanism to vindicate the rights of wronged employees.  Allowing whistleblowers such as Mr. Alter access to the courts where, as here, there is no clear enforcement mechanism, is entirely consistent with the legislative scheme.

**CONCLUSION**

Defendants' motion to dismiss should be denied in all respects.

Dated: October 30, 2023
New York, NY

**GISKAN SOLOTAROFF & ANDERSON LLP**

By:      /s/
Jason L. Solotaroff
Amy Robinson
90 Broad Street, 2nd Floor
New York NY 10004
(646) 964-9640
*Attorneys for Plaintiffs*

17