**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**---------------------------------------------------------x**

| | | |
|---|---|---|
| **ALTER** | : | |
| **Plaintiff,** | : | |
| **-against-** | : | **1:23-cv-2305 (ALC)** |
| **NYC SCHOOLS CONSTRUCTION** | : | |
| **AUTHORITY et al Defendants** | : | **ORDER & OPINION** |

**---------------------------------------------------------x**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Seth Alter brings this action against Defendants New York City Schools Construction Authority and Felice Sontupe under 42 U.S.C. § 1983, N.Y. Civ. Serv. Law Section 75-b, and N.Y. Pub. Auth. Law Section 2857. Defendants move for summary judgment on Plaintiff's claims. ECF No. 88. For the reasons stated below, Defendants' motion for summary judgment on Plaintiff's claims is GRANTED.

## BACKGROUND[1]

**Facts**

Plaintiff is a financial consultant who has held certifications as a Certified Public Accountant, Certified in Financial Forensics, and Certified Fraud Examiner. Declaration of Jason L. Solotaroff, Ex. A, ECF No. 105. From November 2014 to 2022, Plaintiff served as an

[1] This section is drawn from the Amended Complaint, see ECF No. 18, Defendants' Statement of Undisputed Material Facts submitted pursuant to Local Civil Rule 56.1, *see* ECF No. 90 ("D. Stmt."), Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, *see* ECF No. 104 (Pl. Resp. Stmt."), Defendants' Reply to Defendants' Response to Statement of Undisputed Material Facts, *see* ECF No. 108 ("D. Rep."), and the summary judgment briefing.

Investigative Accountant for the Office of the Inspector General ("OIG") at the School Construction Authority ("SCA"). D. Stmt. ¶ 7. In this role, Plaintiff reported to the Office of the Inspector General's Manager of Field Investigations, first John Gray and then Nicholas Scicutella, and in 2021, the Office of the Inspector General's Chief of Staff, William Schaeffer. *Id.* ¶¶ 12-13. These individuals would assign Plaintiff to specific investigations and would assign him tasks on these investigations. Deposition of Nicholas Scicutella ("Scicutella Dep.") at 43:9-18.

From 2014 to 2017, the Office of the Inspector General was headed by Inspector General Maria Mostajo. Deposition of Seth Alter ("Alter Dep.") at 30:17-31.1. In December 2016 and April 2017, Mostajo recommended Plaintiff for a promotion to Assistant Inspector General. D. Stmt. ¶ 28. In 2017, Mostajo retired as Inspector General and was replaced by Defendant Felice Sontupe. Alter Dep. at 30:24-31.3. In early 2018, according to Scicutella, Sontupe denied Plaintiff's promotion. *Id.* at 31:22-32.4. Plaintiff continued to seek a promotion. Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") at 4. At a December 2019 meeting, Sontupe told Plaintiff that his work was valued, and while she would not request that Plaintiff be promoted at that time, she would revisit promoting him at a later date. Pl. Resp. Stmt. ¶ 91.

During his tenure at the Office of the Inspector General, Plaintiff would at times seek investigations into certain subjects and areas to safeguard the funds of the SCA and discover inappropriate or unlawful spending. While part of Plaintiff's role included making recommendations to investigate certain areas, the decision as to what to investigate was made by the IG or the IG's senior staff. D. Stmt. ¶ 21. Plaintiff spoke about the need to investigate what he thought was improper commingling of funds for projects and potential corruption. Pl. Opp. at

4-5. In April 2019, Sontupe criticized Plaintiff for continuing to look into these issues. *Id* at 5. Plaintiff raised concerns about Sontupe's reactions to his investigative requests to Schaeffer, the Chief of Staff. Alter Dep. at 70:1-22. In a December 2019 meeting, Sontupe provided Plaintiff with feedback that he was supercilious and condescending and that this hindered investigations and prevented him from being productive since nobody wanted to work him. D. Rep. ¶ 92.

In February 2020, Plaintiff was at a meeting with Sontupe at which Plaintiff's report on Limited Scope projects for mentor firms to bid on was discussed. *Id* at 102:6-103:16. Sontupe became upset and ended the meeting. Scicutella Dep. at 64:21-65:12.

In September 2020, Sontupe sent Plaintiff an unprofessional behavior memorandum. regarding Plaintiff's repeated demands for a promotion, and continued disruptive nature and hostility toward his supervisors. D. Rep. ¶ 111. This memorandum concluded that if Plaintiff did not "abide by this request to refrain from unprofessional behavior, further disciplinary action will be taken." *Id*. at 123:16-19.

In November 2021, Plaintiff's attorneys made a verbal complaint to the Department of Investigation ("DOI") concerning retaliation he claims to have been experiencing. *Id.* at 71:9-14. In December 2021, Plaintiff's attorneys made a whistleblower complaint to DOI. Immediately thereafter, in October 2022, Plaintiff was placed on a leave of absence and was escorted from the OIG offices. *Id*. at 72:6-11. In November 2022, Plaintiff's employment was formally terminated. *Id.* at 72:3-5. Plaintiff was the only full-time employee Sontupe recommended be terminated during her tenure as Inspector General. *Id.* at 28:2-15.

**<u>Procedural History</u>**

On March 17, 2023, Plaintiff filed a Complaint against the Defendants. ECF No. 1. On July 21, 2023, Plaintiff amended his Complaint. ECF No. 18. On September 29, 2023,

Defendants filed their Motion to Dismiss. ECF No. 25. On September 4, 2024, the Court denied Defendants' Motion to Dismiss. ECF No. 44. On October 10, 2024, Defendants filed their Answer. ECF No. 51.

On October 16, 2025, Defendants filed their Motion for Summary Judgment. ECF No. 89. On November 13, 2025, Plaintiff filed his Opposition. ECF No. 103. On December 11, 2025, Defendants filed their Reply. ECF No. 106.

**STANDARD OF REVIEW**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). An issue of fact is "genuine" when a reasonable fact finder could render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation omitted).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). A movant "may discharge its burden by showing that the nonmoving party has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Better*

*Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 383 (S.D.N.Y. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Gallo*, 22 F.3d at 586. When the moving party has met its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.*

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* (citing *Anderson*, 477 U.S. at 252).

**DISCUSSION**

I. Section 1983 Claim

A. Plaintiff's Failure to Promote Claim

Defendants argue that Plaintiff's failure to promote-based Section 1983 is time-barred. The statute of limitations for an action brought under Section 1983 is three years. *See Holden v. Port Auth. Of New York and New Jersey*, 521 F. Supp. 3d 415, 433-34 (S.D.N.Y. 2021). "Discrete discriminatory acts" – such as termination or failure to promote – "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

Plaintiff filed his Complaint on March 17, 2023. Therefore, to be within the statute of limitations, Plaintiff's failure to promote claim needs to have accrued by March 17, 2020. The last mention of Plaintiff's promotion, according to the undisputed material facts, was by Defendant Sontupe in a January 2020 meeting where she said she had no intention of promoting anyone in the office. D. Rep. ¶ 93. To be within the statute of limitations, Plaintiff should have brought his Complaint by January 2023. Because he did not, the failure to promote claim is time-barred.

B. Plaintiff's Termination-Based First Amendment Retaliation Claim

Defendants argue that Plaintiff has not alleged a termination-based First Amendment retaliation claim in violation of Section 1983 because Plaintiff did not engage in First Amendment-protected activity. To establish a prima facie case of First Amendment retaliation under Section 1983, Plaintiff must show that: (1) he engaged in protected First Amendment activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011) (internal citations omitted). To assess whether a government employee's speech is protected from retaliation by the First Amendment, courts look at (1) whether the employee spoke as a citizen on a matter of public concern and, if so, (2)

whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). When statements are made pursuant to official duties, the employee is not speaking as a citizen for First Amendment purposes, even when the subject is a matter of public concern. *Id.* 421-22.

As an Investigative Accountant, Plaintiff's duties included reviewing various financial transactions involving contractors or the School Construction Authority ("SCA") itself and assisting with investigations. D. Rep. ¶ 16. While Plaintiff acknowledges that it was part of his role to make recommendations to investigate certain areas, the decision as to what to investigate was made by the IG or the IG's senior staff. *Id.* at 21. Plaintiff alleges that he requested that the SCA-OIG conduct investigations in the following areas: (a) improper commingling of funds for projects that were required to be funded from a specific source with funds for other types of projects as well as use of restricted funds for projects outside the scope of the restriction; (b) improper non-emergency use of contractors who were only eligible to be hired outside of the normal bidding process for emergency situations; (c) potential violations of procurement processes, including not obtaining the minimum required number of bidders for projects and excluding certain bidders; and (d) potentially improper transactions between the SCA and New York City Department of Education ("NYCDOE"). *Id.* ¶ 40. Plaintiff argues that his request that the office make the aforementioned investigations made him the target of retaliation, ultimately resulting in his termination. Amended Complaint ¶ 4.

The Second Circuit has made clear that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *See Weintraub v. Board of Educ. Of*

*City School Dist. Of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010). In *Weintraub*, a public school teacher filed a grievance with his union representative in response to the allegedly inadequate discipline imposed on a student who had thrown a book at him during class on two occasions. *Id.* at 198–99. Even though the facts in *Weintraub* involved union activity, which was not technically part of the plaintiff's official job duties, the Court found that the underlying information in the union grievance was pursuant to the plaintiff's official duties because "it was part-and-parcel of his concerns about his ability to properly execute his duties, as a public school teacher—namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." *Id.* at 203 (internal citations and quotations omitted).

> For a public employee to demonstrate that she spoke as a citizen, []he must establish that h[is] speech fell outside of h[is] official responsibilities. To determine whether a public employee has met that burden, a court must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two, along with other contextual factors such as whether the plaintiff's speech was also conveyed to the public… Ultimately, whether a public employee's speech was pursuant to h[is] job duties is a practical inquiry, and a court should not construe a government employee's official duties too narrowly by relying solely on a formal job description.
>
> *Long v. Byrne*, 146 F.4th 282, 292 (2d Cir. 2025).
>
> When a government employee concededly engages in speech pursuant to his official duties, the fact that he persists in such speech after a supervisor has told him to stop does not, without more, transform his speech into protected speech made as a private citizen. Rather, the critical question is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.
>
> *Id.,* at 293.

Here, while Plaintiff's official job duties may not have explicitly included determining the areas SCA investigated, Plaintiff could recommend areas for his supervisors to investigate. For instance, Plaintiff recommended SCA look into possible corrupt, wasteful or fraudulent spending associated with the SCA's emergency funding and SCA's use of emergency contractors. D. Stmt. ¶ 52. Specifically, with Schaeffer, Plaintiff discussed the laws that he

reviewed concerning the use of construction managers or emergency response contractors and the construction of pre-Ks and 3Ks with Schaeffer, to which Schaeffer responded that this sounded interesting. *Id.* ¶ 55 (internal citations and quotations omitted and cleaned up). Plaintiff testified that the improper use of emergency response contractors in nonemergency situations was included on the finalized case plan for the playgrounds review in March or April of 2022 as to investigate further. *Id*. ¶ 56 (internal citations and quotations omitted). Schaeffer did not see something that suggested there were potentially corrupt, wasteful, or fraudulent spending associated with the emergency response contractor projects (internal citations and quotations omitted and cleaned up) *Id.* ¶ 58.

Plaintiff's request, and other similar ones he made, to investigate can be viewed as pursuant to his official duties because his role required him to recommend areas to investigate and the areas he recommended were within the OIG's mission to protect the SCA from fraud, waste, and abuse and to ensure its employees and contracts comply with all federal, state, and local laws as well as all SCA policies and protocols. D. Rep. ¶¶ 3-4.

Plaintiff argues that his speech was analogous to speech found to be protected in *Long* and *Specht*, two cases decided at the motion to dismiss stage. *See Specht v. City of New York*, 151 F.4th 594, 599 (2d Cir. 2021); *Long v. Byrne*, 146 F.4th 282, 290 (2d Cir. 2025). The Court disagrees. In *Specht,* the court found that the fire marshal's "speech," his decision not to file a false investigative report, was protected, reasoning that because filing a false report is a crime, the refusal to file a false report was outside of the marshal's official duties, 151 F.4th at 604. In *Long*, the plaintiff, a court clerk, refused to discuss with defendant, a Town Justice, why a Commission was investigating the defendant, 146 F.4th at 297. Even though this refusal to discuss took place at work, the court found that it constituted protected speech because it did not

involve the plaintiff's official duties. *Id.* The Commission was investigating potential misconduct of the defendant, so there was no implication that plaintiff and her work were being investigated. *Id.*

Here, Plaintiff communicated with supervisors about his recommendations that OIG carry out certain investigations. This was within his official job duties. While not dispositive, plaintiff also didn't communicate with outside agencies or go public with his recommendations. Additionally, Plaintiff's whistleblower complaints came after the alleged retaliation. D. Rep. ¶¶ 119-20. Therefore, Plaintiff's speech was not protected under the First Amendment, and Plaintiff has not made out a prima facie case of retaliation-based termination under Section 1983.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, in part. The federal claims are dismissed. The Clerk of Court is respectfully directed to terminate ECF No. 88.

**SO ORDERED.**

**Dated:** September 29, 2026

**New York, New York**

**ANDREW L. CARTER, JR.**

**United States District Judge**